UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Oil Spill by the Oil Rig**<br>    **"Deepwater Horizon" in the Gulf**<br>    **Of Mexico, on April 20, 2010** | **MDL 2179**<br><br>**SECTION: J** |
| **This Document Relates to:**<br>*All Cases in Pleading Bundle B3* | **JUDGE BARBIER**<br><br>**MAGISTRATE WILKINSON** |

| | |
|---|---|
| **KIRK PREST** | **CIVIL ACTION No. <u>17-3409</u>** |
| **VERSUS** | **SECTION: J** |
| **BP EXPLORATION & PRODUCTION INC., BP AMERICA PRODUCTION COMPANY AND BP P.L.C.** | **JUDGE BARBIER**<br><br>**MAGISTRATE WILKINSON** |

### COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff Kirk Prest who submits this Complaint for Damages and avers as follows:

1.

Plaintiff, Kirk Prest ("Mr. Prest"), is a person of the full age of majority and resident domiciliary of the Parish of Jefferson, State of Louisiana.

2.

Made Defendants herein are:

a) BP Exploration & Production, Inc. ("BP Exploration") a Delaware corporation with its principal place of business in Warrenville, Illinois;

1

    b) BP America Production Company, ("BP America Production"), a Delaware corporation with its principal place of business in Houston, Texas;

    c) BP P.L.C. ("BP P.L.C.") a British public limited company with its corporate headquarters in London, England.

BP Exploration, BP America Production, and BP P.L.C. are collectively referred to as " BP Defendants."

3.

Jurisdiction of this Honorable Court is proper under 28 U.S.C. §1333 as this is an Admiralty and Maritime claim. This matter is governed by the General Maritime Law, the Oil Pollution Act, the Clean Water Act and the applicable state law for supplementation as appropriate.

4.

On April 30, 2010, as part of the Vessels of Opportunity Program, Mr. Prest entered into a Master Vessel Charter Agreement with BP America Production Company as Charterer of Mr. Prest's twenty-four (24) foot vessel. Between May 3, 2010 through October 30, 2010, Mr. Prest performed clean-up and response activities associated with the Deepwater Horizon explosion and subsequent oil spill. During the clean-up and response activities, Mr. Prest performed wildlife search and rescue operations, oil search and reporting, Louisiana wildlife upper management media and news reporting operations and transportation, news media reporting, film operations and transportation, wildlife and bird mortality operations, accounting and reporting of exposure results with U.S. fish and wildlife service and Louisiana wildlife and fisheries agencies and monitoring and overseeing bird scare cannons.

5.

In May of 2010 for three and a half (3 ½) to four (4) weeks, Mr. Prest performed clean-up and response activities at all Venice areas. During this time, Mr. Prest was exposed to oil,

dispersants, hazardous and harmful chemicals, odors and emissions. From June, 2010 through October 30, 2010, Mr. Prest performed clean-up and response activities at Grand Isle. During this time, Mr. Prest was exposed to oil, dispersants, hazardous and harmful chemicals, odors and emissions. During the time Mr. Prest was working at Grand Isle, Mr. Prest had to drive his vessel through the Barataria Bay (Grand Lake). During this time, because of the conditions of the Barataria Bay (Grand Lake), Mr. Prest was exposed to additional oil and dispersants, including but not limited to oil and dispersant exposure and intake in his eyes.

6.

During the clean-up and response activities, Mr. Prest asked for personal protective equipment and was told that there was no mention of the use of personal protective equipment. Mr. Prest was also told that asking for personal protective equipment could result in losing his clean-up and response activities. Mr. Prest performed all of the above tasks without the necessary protective equipment. The BP Defendants participated in the post-explosion Oil Spill remediation and response efforts. This participation included but was not limited to negligently and/or intentionally spraying and/or directing the spraying of chemical dispersants in the immediate vicinity of clean-up and response workers without warning the clean-up and response workers and/or providing personal protective equipment to the clean-up and response workers.

7.

After October 30, 2010, Mr. Prest was asked to continue to work on the clean-up and response activities, but was unable to due to the health problems he sustained as a result of performing clean-up and response activities.

8.

Additionally, the BP Defendants did not warn Mr. Prest of the dangers presented by crude

oil and cleaning dispersants. As a result of the considerable amount of time spent by Mr. Prest on clean-up and response activities without the necessary protective PPE, Mr. Prest was unnecessary exposed to toxins through inhalation and other routes of exposure. The BP Defendants violated federal laws and/or regulations by failing to, among other things: (1) provide Mr. Prest with a safe workplace; (2) develop and implement a site safety plan and educate Mr. Prest of the same; and (3) provide Mr. Prest with the proper clothing and PPE.

9.

All of the above has resulted in serious illness for Mr. Prest, including but not limited to "blinding" eye injury, skin injuries, respiratory, neurological damages, stress medications and other long term health effects not known at this time.

10.

The BP Defendants were negligent in causing the fire and explosion and the uncontrolled release of massive amounts of oil, chemicals and gasses, resulting in injuries and damages to plaintiffs.

11.

The incident forming the subject matter of this litigation occurred through no fault of plaintiff, but instead, as a direct result of the negligence and fault of the BP Defendants as well as their employees, agents and/or servants for which they are responsible. Plaintiff asserts a cause of action against the BP Defendants under the general maritime law, Oil Pollution Act and the Clean Water Act. Plaintiff asserts these causes of action against the BP Defendants and their employees, agents and/or servants for which they are responsible in one or more of the following nonexclusive respects:

(a)     Failure to prevent the Deepwater Horizon explosion and subsequent oil spill;

(b)     Failure to timely stop the oil and other toxins from leaking from the well being serviced by the Deepwater Horizon and into the Gulf of Mexico at substantial amounts;

(c)     Failure to properly and timely clean-up the oil and other toxins from the Gulf of Mexico;

(d)     Failure to utilize proper and safe products in its attempt to clean up the oil and other toxins from the Gulf of Mexico;

(e)     Failure to take the necessary and reasonable steps to protect the health and welfare of plaintiff and other persons working and living in close contact with the toxic chemicals;

(f)     Negligent, improper and unsafe use and control of the equipment aboard the vessel;

(g)     Failure to enforce the use of safety equipment including, but not limited to the failure to use of respirators while working around the toxic materials;

(h)     Failure to properly investigate and conduct an adequate job risk analysis to recognize the danger of working in this general area following this explosion and oil spill;

(i)     Failure to properly inspect and warn plaintiff und others of the hazards present during these operations including but not limited to the dangers of exposure to the toxic materials;

(j)     Failure to properly train personnel in the use of respirators and other safety equipment aboard the vessel;

(k)     Failure to provide plaintiff with a reasonably safe place to work;

(I)     Failure to adequately supervise operations aboard the vessel;

(m)     Failure to provide and ensure reasonable communication between the persons working aboard the vessel;

(n)     Failure to provide adequate safety training guidelines and proper safety precautions to plaintiff and others;

(o)     Failing to have an adequate and safe method for accomplishing the task during which plaintiff was injured; and

(p)     Other negligent acts and/or omissions to be shown at the trial of this mutter.

12.

All of the above stated actions and inactions of the BP Defendants set forth in this Complaint are violations of the General Maritime Law, the Oil Pollution Act, the Clean Water Act and applicable state law.

13.

In addition to the negligent actions described above and in the alternative thereto, the injuries and damages suffered by Plaintiff were caused by the acts and/or omissions of the BP Defendants that are beyond proof by the Plaintiff but which were within the knowledge and control of the BP Defendants, there being no other possible conclusion that the fire, explosion sinking and oil resulted from the negligence of the BP Defendants. Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the BP Defendants exercised the high degree of care imposed on them and Plaintiff therefore, plead the doctrine of res ipsa loquitur.

14.

As a result of said accident, Plaintiff sustained severe physical and mental injuries as stated above and plaintiff seeks the following damages in connection with his injuries:

(a) Past and future lost/impaired wages, income, earning capacity and employment related benefits;

(b) Past and future physical pain and suffering, disability and disfigurement;

(c) Past and future mental and emotional pain and suffering, as well as the loss of enjoyment of life;

(d) Past and future medical, custodial and rehabilitation expenses;

(e) Punitive damages;

(f) Past and future maintenance, cure and found; and

(g) Additional damages to be shown at the trial of this matter.

15.

Nothing Plaintiff did or failed to do caused or contributed to the above described accident and the resulting injuries.

16.

Plaintiff seeks punitive damages under maritime law and/or alternatively, under state law on the grounds that the wrongful conduct of the BP Defendants has been wanton, reckless and in gross disregard for the safety and health of the plaintiff. Plaintiff therefore, seeks punitive damages against said BP Defendants to punish them for their gross disregard for safety and health of the plaintiff.

17.

Defendants' misconduct caused Plaintiff to be exposed to disastrous levels of crude oil vapors, natural gas, dispersants and other gasses and chemicals ("harmful substances"). Not only is this the largest oil spill in the country's history, but it is also believed to be the largest use of dispersants ever.

18.

The exposure to these harmful substances was compounded exponentially by the burning technique employed by the BP Defendants as a remediation method. Upon information and belief, exposure to the substances creates an unreasonable risk of harm because it creates an exposure to the following nonexclusive list of one or more components and or by-products: (1) aromatic hydrocarbons; (2) straight chained hydrocarbons; (3) benzene rings; (4) polycyclic; aromatic hydrocarbons; (5) crude oil constituents; (6) heavy metals; (7) naphthalene; (8) benzopyrene diolepoxide; (9) 2-butoxyethanol; and (10) numerous other dangerous substances.

19.

The BP Defendants knew or should have known that exposure to these substances in these amounts created an unreasonable risk of health to Plaintiff.

20.

At all material times, Plaintiff was unaware and had no reasonable way to know or realize that his significant exposure to these substances created an unreasonable risk of harm. As a proximate result of his exposure, plaintiff suffered significant injuries as set forth herein as well as a significantly increased risk of contracting a serious latent disease and/or medical condition, including but not limited to the following: scrotal cancer, esophageal cancer, stomach cancer, lung cancer, intestinal cancer, kidney cancer, bladder cancer, leukemia, lymphoma, skin cancer, brain cancer, synovial sarcoma, breast cancer, laryngeal cancer.

21.

Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he had not been exposed and (b) the chances of members of the public at large developing the disease.

22.

A monitoring procedure exists that makes the early detection of the disease possible. Many of the environmental diseases from toxic exposure are chronic in nature and may take years to develop. Clinical warning signs can be utilized to prevent the development of the disease. Some diseases can be reversed if detected early enough. When the environmental disease cannot be prevented, early detection can affect the disease process such that proper treatment may be

received early for the best results. The objective of medical surveillance is to detect the development of a disorder while the disorder is still subclinical (without symptoms). The monitoring procedure can be prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles. The development of abnormal laboratory tests during medical surveillance may provide a warning signal of developing disease or malignancy.

23.

The monitoring regime would be different from that normally recommended in the absence or exposure. Procedures may include, but may not be limited to the evaluation of hematological, clinical chemistry urinalysis, occult blood and immunological parameters.

24.

There is demonstrated clinical value in the early detection and diagnosis of the disease. Combined with physician evaluation and additional medical monitoring procedures, early diagnosis provides successful treatment, prevention of loss of life and reduction in pain and suffering and health care costs.

25.

Plaintiff is entitled to prejudgment interest on damages from the date of loss. Also any damages which the Court determines are not properly subject to an award of prejudgment interest, plaintiff seeks interest from the date of judicial demand or, in the alternative, the date of judgment.

26.

Plaintiff is entitled to and requests a trial by jury on all issues raised in this complaint.

WHEREFORE, Plaintiff, KIRK PREST, prays that Defendants, BP EXPLORATION & PRODUCTION INC., B.P AMERICA PRODUCTION COMPANY and BP P.L.C., be served with a copy of this lawsuit and that after a trial by jury and all due proceedings, there be judgment

rendered in favor of the plaintiff plus all due interests and costs. Plaintiff also prays for all other appropriate general and equitable relief necessary and proper under the circumstances.

          Respectfully submitted:

          */s/ Joseph M. Bruno*
          Joseph M. Bruno, (LA Bar No. 3604)
          Bruno & Bruno, LLP
          855 Baronne Street
          New Orleans, Louisiana 70113
          Telephone: (504) 525-1335
          Facsimile: (504) 561-6775
          jbruno@brunobrunolaw.com
          *Attorneys for Kirk Prest*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Complaint has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of April, 2017.

          */s/ Joseph M. Bruno*