UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIRK PREST                                               CIVIL ACTION

VERSUS                                                   NO. 17-3409

BP EXPLORATION &                                         SECTION M (4)
PRODUCTION INC., *et al.*

## ORDER & REASONS

Before the Court is a motion by defendants BP Exploration & Production Inc., BP America Production Company ("BP America"), and BP p.l.c. (collectively, "Defendants") to strike and exclude the medical causation opinions of plaintiff's treating ophthalmologist, Dr. Robert Ross, for failure to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence.[1]  Plaintiff Kirk Prest responds in opposition,[2] and Defendants reply in further support of their motion.[3]

Also before the Court is Defendants' motion for summary judgment arguing that Prest cannot prove general causation without an admissible expert opinion.[4]  Prest responds in opposition,[5] and Defendants reply in further support of their motion.[6]

Having considered the parties' memoranda, the record and the applicable law, the Court grants both motions and dismisses Prest's claims with prejudice.

---

[1] R. Doc. 50.
[2] R. Doc. 58.
[3] R. Doc. 67.
[4] R. Doc. 51.
[5] R. Doc. 59.
[6] R. Doc. 69.

I.      BACKGROUND

This case is one of the "B3 cases" arising out of the *Deepwater Horizon* oil spill that occurred on April 20, 2010.[7] The B3 plaintiffs all make "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g. dispersant)."[8] These cases were originally part of a multidistrict litigation ("MDL") pending in another section of this court before Judge Carl J. Barbier. When Judge Barbier approved the *Deepwater Horizon* medical benefits class action settlement agreement, the B3 plaintiffs either opted out of the settlement or were excluded from the class definition.[9] Judge Barbier then severed the B3 cases from the MDL, and those cases were reallotted among the judges of this court.[10]

Prest alleges that, on April 30, 2010, he joined the "vessels of opportunity" program by entering into a master vessel charter agreement with BP America for the use of his 24-foot vessel in oil-spill cleanup work.[11] Between May 16 and November 26, 2010, Prest performed oil-spill cleanup work consisting mostly of wildlife rescue operations near Venice, Grand Isle, and Port Fourchon.[12] Prest alleges that he was exposed to crude oil and dispersants while engaged in the cleanup efforts and had adverse health conditions or symptoms including, but not limited to, "blinding" eye injury, skin injuries, respiratory issues, neurological damages, and stress.[13] He also claims Central Serous Retinopathy ("CSR") and other eye complications; hypertension and related cardiovascular issues; anxiety and depression; skin, nasal, and respiratory issues; and other

---

[7] R. Doc. 6 at 1-2, 50.
[8] *Id.* at 50.
[9] *Id.* at 51 n.3.
[10] *Id.* at 1-58.
[11] R. Doc. 1 at 2.
[12] *Id.* at 2-3; R. Doc. 40-3 at 3, 5. The complaint says that he did the work from May 3 to October 30, 2010. R. Doc. 1 at 2. The dates listed in the text above are found in Prest's "PTO 66 Particularized Statement of Claim for Remaining B3 Plaintiffs." R. Doc. 40-3 at 3, 5.
[13] R. Doc. 1 at 4.

neurological injuries causing migraines, insomnia, and memory loss.[14] Prest opted out of the medical benefits class action settlement agreement.[15] In this action, he asserts claims for negligence with respect to the oil spill and cleanup.[16]

In the case management order for the B3 bundle of cases, Judge Barbier noted that, to prevail, "B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[17] He further observed that causation "will likely be the make-or-break issue for many B3 cases," and "the issue of causation in these toxic tort cases will require an individualized inquiry."[18]

Prest, like all other B3 plaintiffs to have appeared before this Court, relied on Dr. Jerald Cook to provide expert testimony as to general causation, *i.e.*, that exposure to oil and dispersants was capable of causing in the general population the kind of health issues he alleges.[19] For most B3 cases, Cook issued an omnibus, non-case-specific general causation expert report that has been used by many B3 plaintiffs and has evolved over time. Prest produced in discovery, and relied upon, Cook's September 30, 2022 report, which includes some information specific to Prest.[20] However, in granting Defendants' motion to exclude Cook's report in this case, this Court concluded that Cook's September 30 report did not cure the previously identified deficiencies in his prior reports; specifically, the September 30 report did not provide admissible opinions concerning general causation.[21]

---

[14] R. Doc. 26 at 1.
[15] R. Doc. 1-3.
[16] R. Doc. 1 at 4-5.
[17] R. Doc. 6 at 53.
[18] *Id.* at 53-54.
[19] R. Doc. 40-5.
[20] *Id.*
[21] R. Doc. 49.

Cook, however, is not Prest's only purported causation expert. Prest's Rule 26(a)(2)(C) expert disclosures indicate that his treating ophthalmologist, Ross, will testify about Prest's treatment and also render expert opinions regarding the potential causes of CSR, including "type A personality," stress, and exposure to weathered crude oil and dispersants.[22] Defendants now move to strike Ross, arguing that the disclosure is insufficient given his causation opinions.[23] They also move for summary judgment, arguing that once Ross's causation opinions are stricken, Prest has no admissible expert opinions concerning general causation.[24]

## II.   LAW & ANALYSIS

### A. Defendants' Motion to Strike Ross

Defendants move to strike Ross, arguing that, because his purported opinions expand beyond facts and knowledge gained in the course of his treating Prest and attempt to delve into the realm of general causation, Ross was required to issue a fulsome expert report pursuant to Rule 26(a)(2)(B).[25] Defendants also argue that Ross cannot survive a challenge under Rule 702 because he does not meet the minimal requirements for rendering reliable general or specific causation opinions.[26] Specifically, Prest's Rule 26(a)(2)(C) disclosure of Ross does not contain the information required for a general causation opinion, "such as (a) an identified association in the literature between exposure and disease, and (b) the harmful dose of a specific toxin necessary to cause a disease or injury in the general population."[27] In sum, Defendants argue that Ross's testimony should be limited to the knowledge he gained during his treatment of Prest.[28]

---

[22] R. Doc. 50-4 at 1-3.
[23] R. Doc. 50.
[24] R. Doc. 51.
[25] R. Doc. 50-1 at 3-7.
[26] *Id.* at 8-11.
[27] R. Doc. 67 at 5.
[28] R. Docs. 50-1 at 12; 67 at 2-4.

In opposition, Prest argues that, because Ross is a treating physician, a summary disclosure under Rule 26(a)(2)(C) is all that is required, and it was provided.[29] Prest also argues that Ross satisfies Rule 702 because he opines that it is more probable than not that chronic undue stress caused by the oil spill exacerbated Prest's underlying CSR disease process which "does not reach the issue of toxic exposure, and therefore, does not require both general and specific causation" expert opinions.[30] Finally, Prest argues that Defendants should depose Ross to determine the basis of all his opinions.[31]

Rule 26(a)(2) governs the disclosure of expert testimony. An expert that is retained by a party for purposes of litigation is required to provide an expert report pursuant to Rule 26(a)(2)(B). *See* Fed. R. Civ. P. 26(a)(2)(B). Prior to 2010, non-retained experts, such as treating physicians, were exempt from Rule 26's expert reporting requirements. *Tucker v. United States*, 2019 WL 4198254, at *2 (E.D. La. Sept. 4, 2019) (collecting cases). In 2010, Rule 26(a)(2)(C) was added, which provides a less stringent disclosure requirement for non-retained experts, such as treating physicians. *Id.* Rule 26(a)(2)(C) requires that a party, with respect to a non-retained expert, provide a written disclosure stating: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). A Rule 26(a)(2)(C) disclosure "need not be extensive," but must include "'an abstract, abridgement, or compendium of the opinion *and* facts supporting the opinion.'" *Causey v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 2234749, at *2 (E.D. La. May 16, 2018) (quoting *Rea v. Wis. Coach Lines,*

---

[29] R. Doc. 58 at 1-3.
[30] *Id.* at 3-4.
[31] *Id.* at 4-5.

5

*Inc.*, 2014 WL 4981803, at *5 (E.D. La. Oct. 3, 2014)) (internal quotation marks omitted; emphasis in original).

Although a Rule 26(a)(2)(C) summary disclosure generally suffices for a treating physician, a more comprehensive report that complies with Rule 26(a)(2)(B) is required when such a witness intends to render opinions based on scientific, technical, or other specialized knowledge. *See Hooks v. Nationwide Housing Sys., LLC*, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016). "For example, testimony as to causation or as to future medical treatment has been considered the province of expert testimony subject to the requirements of section (a)(2)(B)." *Id.* (citing *Rea*, 2014 WL 4981803, at *2). Further, "where physicians' testimony is prepared in anticipation of litigation by the attorney or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B)." *Id.*

"Failure to comply with the deadline for disclosure requirements results in mandatory and automatic exclusion under Federal Rule of Civil Procedure 37(c)(1)." *Tucker*, 2019 WL 4198254, at *2 (quotation marks and citations omitted). And the excluded witnesses may not offer testimony "to supply evidence on a motion, at a hearing, or at a trial, unless the failure [to provide Rule 26 disclosures] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether the failure was substantially justified or harmless, courts consider: "(1) the explanation for the failure to adhere to the deadline; (2) the importance of the proposed modification of the scheduling order; (3) the potential prejudice that could result from allowing the modification; and (4) the availability of a continuance to cure that prejudice." *Leggett v. Dolgencorp. LLC*, 2017 WL 4791183, at *2 (E.D. La. Oct. 24, 2017) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

If an expert is properly disclosed, the district court must determine whether the proposed testimony is admissible under Rule 702 of the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See id.* at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that

7

characterizes the practice of an expert in the relevant field." *Id.* at 152.  The party offering the testimony must establish its reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Rule 702 also requires that an expert be properly qualified.  Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact.  *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020).  A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion.  *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

Here, Prest's Rule 26(a)(2)(C) disclosure of Ross states that Ross will testify as to the effects of stress and its related biological processes that caused or contributed to Prest's CSR.[32]  Assuming these specific causation opinions related to Prest's CSR are within Ross's expertise as an ophthalmologist and constitute knowledge that would have been gained during his treatment of Prest, such opinions may be properly included in a Rule 26(a)(2)(C) summary disclosure.[33]

The disclosure also indicates, however, that Ross will testify and render opinions about the "transmission path pertinent to Mr. Prest's exposure, including but not limited to, the fact that weathered crude oil and dispersants that were evaporated into the air, aerosolized by wave action,

---

[32] R. Doc. 50-4 at 2.

[33] Because the Court holds that Prest has not provided the necessary expert opinion on general causation, the Court does not now determine whether the specific causation opinions are admissible, even assuming they were properly disclosed.  For example, "one of the factors courts consider under *Daubert* for specific causation is whether the expert has adequately accounted for alternative explanations."  *Collett v. Weyerhaeuser Co.*, 512 F. Supp. 3d 665, 674 (E.D. La. 2021).  Defendants are right to question whether Prest has satisfied this requirement to support Ross's specific causation opinions.  R. Docs. 50-1 at 11-12; 67 at 5.

wind action and turbulence with significant inhalation and dermal exposures," thereby exposing him "to volatile organic compounds, polycyclic aromatic hydrocarbons (PAH), N-hexane and Corexit dispersant."[34] Thus, Prest represents that Ross will testify and render opinions as to the chemicals to which Prest was allegedly exposed and the effects those chemicals may have on the body, culminating in the opinion that "there were multiple pathways for Mr. Prest's exposure to Corexit and weathered crude oil during the BP Oil Spill cleanup, including possible CSR causation and exacerbation, and potential direct retinal and optic nerve toxicity with mild papilledema reported by Dr[.] Vives, to cause Mr. Prest's vision degradation."[35] To the extent these opinions purport to be general causation opinions, they do not arise from Ross's treatment of Prest, and thus were required to be disclosed in an expert report compliant with Rule 26(a)(2)(B). *See, e.g., Hooks*, 2016 WL 3667134, at *3 (noting that expert opinion as to causation is subject to the more fulsome requirements of Rule 26(a)(2)(B)). Moreover, Prest's summary disclosure of Ross's opinions does not even comply with Rule 26(a)(2)(C) because there is no explanation of the facts supporting these opinions. The report cites articles Ross supposedly reviewed, but it does not mention a single fact supporting his opinions.[36] The failure to provide a proper Rule 26(a)(2)(B) expert report – or, for that matter, a proper Rule 26(a)(2)(C) expert report – is sufficient to exclude Ross's general causation opinions. *Collett*, 512 F. Supp. 3d at 674 (noting that a treating physician's failure to provide a Rule 26 expert report on subjects outside of treatment would justify exclusion).

Even if Prest had complied with the disclosure requirements, however, Ross's general causation opinions for his exposure claims would be excluded because they do not comply with Rule 702 and *Daubert*. General causation requires identifying "the harmful dose of any chemical

---

[34] *Id.*
[35] *Id.* at 2-4.
[36] *Id.*

to which [a plaintiff] was exposed that would cause the development in the general population of the adverse health conditions or symptoms … allege[d]." *Carpenter v. BP Expl. & Prod. Inc.*, 2022 WL 2757416, at *5 (E.D. La. July 14, 2022). Expert evidence establishing the dose-response relationship is one of the "'minimal facts necessary to sustain the plaintiff's burden in a toxic tort case.'" *Id.* at *6 (quoting *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)). Ross's summary disclosure does not do this. Indeed, it provides no information about the duration or dose of Prest's alleged exposure, much less the effects of any such duration or dose within the general population.[37] Moreover, Ross is an ophthalmologist, not an immunologist, toxicologist, neurologist, or epidemiologist and, thus, apparently lacks the education, training, and experience regarding the significance or effect of chemical exposure. *Collett*, 512 F. Supp. 3d at 674. Likewise, even if Ross's general causation opinion is limited to an opinion that chronic exposure to undue stress can exacerbate the CSR disease process, he fails to identify any medical or scientific studies or literature of sufficient relevance and reliability as would support that opinion.[38]

In sum, Ross's general causation opinions must be excluded because they were not properly disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) and are unreliable under Federal Rule of Evidence 702 and *Daubert.*

### B. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because Prest lacks general causation expert testimony. This Court previously excluded Cook[39] and has now excluded Ross as a general causation expert. Thus, all of Prest's claims arising from direct chemical exposure

---

[37] *Id.*

[38] In addition, any such opinion would not be helpful to the trier of fact because physical injuries "caused by non-physical stress are not compensable" under maritime law. *See, e.g., Duet v. Crosby Tugs*, 2008 WL 4657786, at *3 (E.D. La. Oct. 20, 2008). *See also infra* at 11-12.

[39] R. Doc. 49.

must be dismissed with prejudice. *See, e.g., Brister v. BP Expl. & Prod. Inc.*, 2022 WL 3586760 (E.D. La. Aug 22, 2022); *Burns v. BP Expl. & Prod. Inc.*, 2022 WL 2952993 (E.D. La. July 25, 2022); *Carpenter v. BP Expl. & Prod. Inc.*, 2022 WL 2757416 (E.D. La. July 14, 2022); *Johns v. BP Expl. & Prod. Inc.*, 2022 WL 1811088 (E.D. La. June 2, 2022).

Prest urges, however, that expert testimony is not required to support his claim that stress indirectly related to chemical exposure exacerbated his CSR.[40] In support of his argument, Prest cites *Walker v. BP Exploration & Production, Inc.*, 2022 WL 2160409, at *5 (E.D. La. June 15, 2022), in which another section of this court stated that if a plaintiff claims he "experiences depression and anxiety due to the hardship of his alleged ordeal with exposure and various physical injuries and conditions," as opposed to depression and anxiety caused by physical neurological changes resulting from chemical exposure, "such allegations would sound more in the register of damages for 'mental pain and suffering,' or possibly 'loss of enjoyment of life.'" *Id.* (alteration omitted). Nevertheless, the *Walker* court did not address the plaintiff's purported claim for emotional distress because the parties did not discuss the issue with specificity in the briefing before the court. *Id.*

Here, Prest asserts that he experienced stress, anxiety, and depression – emotional issues – not due to neurological changes caused by chemical exposure, but rather as side-effects of dealing with the oil spill. Generally, a plaintiff may not recover for emotional injuries absent an accompanying physical injury. *SCF Waxler Marine, L.L.C. v. M/V Aris T*, 24 F.4th 458, 476 (5th Cir. 2022). However, under a zone-of-danger tort theory (which the Fifth Circuit has not adopted or precluded under general maritime law), a plaintiff can recover for emotional injuries if he is

---

[40] R. Doc. 59 at 7-9.

"placed in immediate risk of physical harm by [a defendant's negligent] conduct." *Id.* (quotation omitted). The Fifth Circuit explained in *SCF Waxler*:

> Even assuming *arguendo* that plaintiffs can recover under the zone-of-danger theory in general maritime law, analogous case law from other contexts state that a plaintiff must establish that "the claimant was objectively within the zone of danger; claimant feared for his life at the time of the accident or person was in danger, and his emotional injuries were a reasonably foreseeable consequence of the defendant's alleged negligence." To be in the zone of danger, a plaintiff must be in "immediate risk of physical harm."

*Id.* (quoting, first, *Owens v. Global Santa Fe Drilling Co.*, 2005 WL 840502, at *3 (E.D. La. Apr. 8, 2005), and then *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994)). The Fifth Circuit explained further that federal appellate courts addressing the zone-of-danger test in maritime cases hold that "a plaintiff was objectively within the zone of danger if he (1) was at the same location where people got injured by the alleged negligent conduct … ; (2) could not leave the dangerous area … ; or (3) experienced a near-miss collision." *In re Deepwater Horizon*, 841 F. App'x 675, 680 (5th Cir. 2021).

Because Prest does not plead any of these scenarios, he was not in any zone of danger and may not recover for emotional injuries. He worked cleaning up oil on or near the coast (many miles from the *Deepwater Horizon* accident site) and began work a few weeks after the initial explosion. Indeed, the Fifth Circuit affirmed the district court's dismissal of the claims for emotional distress made by fishermen who responded to the *Deepwater Horizon* accident to aid with rescue efforts. *Id.* The court reasoned that dismissal was proper because the fishermen were not in the zone of danger as they remained 100 feet or more from the rig and could have moved away from the area. *Id.* The same can certainly be said of Prest. Accordingly, Prest was not in the zone of danger and cannot recover for emotional injuries under the prevailing law.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to strike Ross (R. Doc. 50) is GRANTED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (R. Doc. 51) is GRANTED, and Prest's claims against them are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 8th day of November, 2022.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE